UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| ZONA JONES, individually and on behalf of others similarly situated, | § § § | |
| Plaintiff, | § § | CASE NO.: |
| v. | § § | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | § § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

## CLASS ACTION COMPLAINT

### I.      INTRODUCTION

1. "Americans passionately disagree about many things. But largely are united in their distain for robocalls." *William P. Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). The United States Supreme Court in *Barr* eloquently described our country's feeling about robocalls and what this case is about.

2. Plaintiff Zona Jones ("Plaintiff" or "Jones") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance robo-calling practices such as text messages. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. Plaintiff was the victim of a car crash driven by an individual who had an insurance policy with Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). State Farm then sent a nonconsensual, autodialed text message to the Plaintiff.

4. State Farm has been sued previously in a class action for their refusal to abide by the TCPA but has made the business decision to put its monetary gain over consumer privacy. This class action is the best – and probably *only* -- means of stopping these illegal text messaging campaigns, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.   PARTIES

5. Plaintiff Zona Jones is a natural person who resides in Union County, Arkansas. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39), and is citizen of the State of Arkansas. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue. Plaintiff received the communications at issue in this lawsuit while in the State of Arkansas.

6. Defendant is one of the largest insurance companies in the world. State Farm is a citizen of Illinois because it is incorporated and headquartered in Illinois.

## III.   JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims.

8. This Court also has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The putative class size exceeds 100 persons. At least one member of the putative class is a citizen of a different state than Defendant. Lastly, the aggregate amount in controversy exceeds $5,000,000, excluding costs, fees and interest.

9. This Court has personal jurisdiction over Defendant and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Defendant does business in this District and because a substantial portion of the events giving rise to this cause of action occurred in this District. Plaintiff received the communications that are at issue in this case while in the State of Arkansas. State

Farm knowingly made these communications into the State of Arkansas, in order to get in touch with Plaintiff, who it knew resided in Arkansas, concerning an automobile registered in Arkansas.

### IV. FACTUAL ALLEGATIONS

### A. TCPA BACKGROUND

10. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread abuses. *See Mims*, 565 U.S. at 371 (noting that federal legislation – the TCPA – was enacted after Congress found that callers, "by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls").

11. Some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The statute broadly bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.").

12. It is black letter law that text messages are considered "calls" under the TCPA. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

**B.    PLAINTIFF'S RECEIPT OF DEFENDANT'S SPAM TEXTS**

14. Plaintiff was in an automobile accident in July 2020.

15. Shortly thereafter, State Farm began calling her in attempts to collect money and information, in order to advance its pecuniary interests.

16. Plaintiff made clear during those phone calls to State Farm that she did not want to be contacted.

17. Notwithstanding Plaintiffs directive that State Farm stop contacting her, State Farm sent her the following text message to Plaintiff on July 21, 2020 at 12:11 pm:

> **State Farm: We'll call you shortly about claim #04-08V0-10K. If you prefer, you can call us at 844-292-8615 ext 9703954956.**

<u>Exhibit A</u>.

18. There may have been additional calls or texts from State Farm to Plaintiff's cell phone, too.

19. The text Defendant sent Plaintiff was a form communication that State Farm also sent to thousands of consumers with substantially identical verbiage.

20. Defendant did not have permission or consent to send any text message to Plaintiff.

21. State Farm's text message calls to the cell phones of Plaintiff and others were made using an automatic telephone dialing system ("autodialer" or "robodialer") under the TCPA.

22.     The equipment State Farm used had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, and Defendant engaged such functionality in its calls to Plaintiff and the class.

23.     No human being at State Farm physically dialed each digit of Plaintiff's cell phone number, on the date it sent Plaintiff its text.

24.     The equipment used to call Plaintiff and the other class members sequentially or randomly accessed their stored telephone numbers, and automatically texted them. The autodialer accessed a dataset of Defendant, sorted through that dataset to determine which data to use to generate a list of numbers to call, generated a brand-new sequence for calling those numbers based upon complex algorithms, and then texted the numbers.

25.     Defendant's dialer intelligently generated a specific sequence of phone numbers, and then automatically texted those numbers, including Plaintiff's.

26.     On information and belief, Defendant keeps records and data from which it can determine which autodialed text message calls it made without consent, but has elected not to engage such to prevent TCPA violations for business reasons. Defendant placed its own pecuniary interests above Plaintiff and others' privacy interests.

27.     Plaintiff and the class have been damaged by Defendant's texts. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the text messages. Defendant's text messages were annoying and a nuisance, and wasted the time of Plaintiff and the class. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to autodialed calls).

28. State Farm's text to Plaintiff came after she had already directed that State Farm stop bothering her with calls. State Farm selfishly, knowingly and intentionally placed its own pecuniary interests ahead of Plaintiff's personal privacy interests – not to mention her statutory rights – when it sent the subject text.

29. Plaintiff and the class suffered injury-in-fact in at least one of the manners contemplated by Congress when it passed the TCPA because of Defendant's conduct.

30. Such injury-in-fact is directly traceable to Defendant's texts.

31. This injury-in-fact is redressable through a favorable decision by this Court.

32. Defendant was aware of the TCPA's restrictions, but nonetheless proceeded to make these text message to Plaintiff and the Class, anyways. State Farm has been sued for TCPA violations before, but continues to make these illegal calls. E.g. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

## V. CLASS ACTION ALLEGATIONS

33. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Rule 23(b)(3) (or, in the alternative, Rule 23(b)(2)) class (the "Class") consisting of:

> All non-customers (i) to whom Defendant or someone on its behalf sent a text or call (ii) to a cellular telephone number, (iii) using the same or similar texting system as was used in the text message calls to Plaintiff, (iv) where State Farm did not obtain the phone number from the individual it texted.

34. Plaintiff alleges a subclass of the Class consisting of persons who meet all of the objective criteria of the Class and that State Farm texted after it had been informed that its calls were unwanted (the "Subclass").

35. Plaintiff reserves the right to amend the Class and Subclass definitions upon the receipt of meaningful discovery.

36. <u>Numerosity</u>: The members of the proposed Class are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class and Subclass are unknown at this time and can be ascertained only through appropriate discovery. Based on information and belief, Plaintiff estimates the number of class members to exceed more than 10,000 persons.

37. <u>Common Questions of Law and Fact Predominate</u>: Common questions of law or fact exist as to all members of the Class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such common questions include, but are not limited to, the following:

    a. Whether Defendant's texts were made used an "automatic telephone dialing system" or an "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b. Whether State Farm had "prior express consent" to text noncustomers who did not give their cell phone numbers to it;

    c. Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the other members of the Class are entitled to treble damages under 47 U.S.C. § 227(b)(3).

38. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and the other Class members are the same: Defendant violated the TCPA by sending texts to each member of the Class, including Plaintiff, using an automatic telephone dialing system, without the requisite permission.

39. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class, is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regard to the claims alleged herein.

40. <u>Superiority of Class Action</u>: Class action treatment is superior to all other alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

41. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

42. <u>Risk of Inconsistent or Varying Adjudications</u>: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendant as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

43. <u>Action Generally Applicable to the Class as a Whole</u>: Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual Class members, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct.

44. Defendant knew about the TCPA, and knew that some of its text messages were being sent to noncustomers -including the texts it sent to plaintiff - but made a conscious decision to send automated text messages and calls in spite of this for business efficiency and pecuniary reasons. Money damages are therefore insufficient to wrench compliance, and prospective relief is necessary to ensure compliance.

45. The identity of the Class is, on information and belief, readily identifiable from Defendant's and its vendors' records.

## VI.   CAUSE OF ACTION

### COUNT I

**Violations of the TCPA, 47 U.S.C. § 227**
**(Autodialed and/or Artificial or Prerecorded Voice Call Violations)**

46. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

47. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

48. Defendant initiated, or caused to be initiated, text messages to the cellular telephone numbers of Plaintiff and other noncustomers through use of an automatic telephone dialing system, or an artificial voice.

49. These calls were made without regard to whether or not Defendant had consent or permission to make such calls. Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the Class when the calls were made.

50. Defendant's calls and violations were negligent; alternatively, they were willful or knowing.

51. To the extent that some or all of the calls and texts to Plaintiff and the Class were made by Defendant's vendors, Defendant is liable for those communications, too.

52. As a result of Defendant's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

53. Defendant has been sued for TCPA violations before, and knows about the TCPA's restrictions.  It elected to send the text messages described herein in spite of its knowledge and prior experience making each text willful and each text message a willful violation of the law.

54. Because Defendant knew or should have known that Plaintiff and the other members of the Class had not given prior express consent to receive its text message calls to their cell phones—and/or willfully caused such calls to be made to the cell phones of Plaintiff and the other members of the Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Class, pursuant to Section 227(b)(3) of the TCPA.

55. Moreover, because Defendant has been sued for TCPA violations before but failed to cease the illegal activity, it is clear that both money damages and injunctive relief are necessary to wrench proper compliance.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court appoint Plaintiff as Class representative, appoint his counsel as Class Counsel, and enter judgment against Defendant for:

A. Certification of the Class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the Class;

C. An injunction prohibiting further automated calls to noncustomers;

D. Damages pursuant to 47 U.S.C. § 227(b)(3), as applicable;

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

## VIII.   JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: September 22, 2020

Respectfully submitted,

*/s/ Christopher D. Jennings*

Christopher D. Jennings, AR Bar No. 2006306
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
T: (501) 372-1300
F: (888) 505-0909
E: chris@yourattorney.com

William "Billy" Peerce Howard*
Fla. Bar No. 103330
**THE CONSUMER PROTECTION FIRM, PLLC**
401 E. Jackson St., Suite 2340
SunTrust Financial Center
Tampa, FL 33602

- 12 -

        T: (813) 500-1500
        E: Billy@theconsumerprotectionfirm.com

        Alexander H. Burke*
        Illinois Bar No. 6281095
        **BURKE LAW OFFICES, LLC**
        909 Davis Street, Suite 500
        Evanston, IL 60201
        (312) 729-5288
        ABurke@BurkeLawLLC.com

        *\*To seek admission pro hac vice*

        *Counsel for Plaintiff and the Proposed Class*