IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LAUREN CROSS, in her capacity as
Executrix of the estate of Zona Jones
and on behalf of others similarly
situated                                                                                    PLAINTIFF

v.                                            Case No. 1:20-cv-01047

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                              DEFENDANT

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint. (ECF No. 38). Plaintiff filed a response (ECF No. 41), and Defendant has filed a reply. (ECF No. 58). Also pending is the parties' Joint Motion to Stay Discovery and Initial Disclosures. (ECF No. 43). The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiff Lauren Cross ("Plaintiff") brings this action on behalf of the Estate of her mother, Zona Jones, alleging that Defendant State Farm Automobile Insurance Company ("State Farm") sent an unsolicited text message to Jones's cell phone in violation of the Telephone Consumer Protection Act ("TCPA"). Jones was involved in an automobile accident in July 2020. Jones contacted State Farm to file an insurance claim related to the incident.[1] State Farm proceeded to contact Jones via calls to her cell phone in an attempt to collect money and/or information from

---

[1] The fact that Jones initiated contact with State Farm is not alleged in the Amended Complaint. (ECF No. 37). However, State Farm has presented a letter addressed to Jones that references a claim number associated with the accident that occurred in July 2020. (ECF No. 38-1). The letter shows that Jones contacted State Farm to file an insurance claim. Moreover, the claim number contained in the letter is specifically referenced in the text message that Plaintiff alleges violates the TCPA. Accordingly, the letter is embraced by and is integral to the Amended Complaint and it may be considered in this Motion to Dismiss without converting the Motion to one of summary judgment. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526-27 (8th Cir. 2017).

Jones. Plaintiff alleges that Jones made clear during those phone conversations that she did not want to be contacted by State Farm.

Plaintiff alleges that on July 21, 2020, after Jones made clear that she did not wish to be contacted by State Farm, State Farm sent the following text message to Jones's cell phone:

> State Farm: We'll call you shortly about claim #04-08V0-10K. If you prefer, you can call us at 844-292-8615 ext 9703954956.

Plaintiff alleges that the text message was sent using a form of automatic telephone dialing technology. In particular, Plaintiff asserts that the equipment State Farm used to send the text message had the capacity to store and produce telephone numbers to be called using a random or sequential number generator. Plaintiff further alleges that the technology used by State Farm had the ability to dial the random numbers that were generated and that no human being at State Farm dialed each digit of Jones's cell phone number on the date the message was sent. Plaintiff concludes that State Farm used this dialing technology to randomly generate a set of electronically stored phone numbers, including Jones's, and then sent an automated text message to each number generated, changing only the claim number associated with each individual phone number at issue.

Jones initiated this Class Action Complaint against State Farm alleging that the text message sent on July 20, 2020, violated the TCPA. *See* 47 U.S.C § 227. (ECF No. 2). However, Jones passed away after this lawsuit was initiated. Plaintiff now brings this Amended Class Action Complaint ("Complaint") on behalf of the estate of Jones as well as all others similarly situated. (ECF No. 37). Defendant now moves the Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## II. STANDARD

A party may move to dismiss an action for lack of subject matter jurisdiction as well as for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). To

survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The factual allegations of a complaint are assumed true and all reasonable inferences are drawn in the plaintiff's favor, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 555-56. A court, however, need not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (internal citations and alterations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.  DISCUSSION

State Farm argues that Plaintiff's Complaint should be dismissed: (1) for lack of standing; (2) for failure to state a claim upon which relief can be granted; and (3) because the TCPA violation alleged did not survive Jones's death. The Court will consider each matter in turn.

**A. Standing**

Article III of the United States Constitution limits judicial power to decide "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing under the case and controversy requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury in fact, the plaintiff must have suffered an injury which is both concrete and particularized. *Id.* at 339. "A concrete injury must be *de facto*; that is, it must actually exist." *Id*. at 340.

The issue presented in the instant Motion is whether the receipt of a single unsolicited text message is sufficient to confer Article III standing to pursue a cause of action under the TCPA. On this point, State Farm argues that Jones's receipt of a single text message, in response to an insurance claim initiated by Jones herself, is not a concrete injury for the purposes of Article III standing. Neither the Supreme Court nor the Eighth Circuit has squarely addressed whether the receipt of a single text message is sufficient to establish a concrete injury in fact under the TCPA. Because of this, the parties have spent considerable time discussing cases from other jurisdictions that discuss Article III standing within the context of the TCPA. These cases illustrate a clear split in circuit court authority regarding whether the receipt of a single text message is sufficient to confer Article III standing to pursue a TCPA claim.

Based on the foregoing, the Court must first determine what standards govern its standing analysis. As stated above, the Eighth Circuit has not specifically addressed whether the receipt of a single text message is sufficient to confer Article III standing to pursue a TCPA claim. However, the Eighth Circuit has answered the similar question of whether a plaintiff has Article III standing

to pursue a TCPA claim based upon the receipt of two unsolicited phone calls.  *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019).  The Court is obligated to adopt a standing analysis that best conforms to Eighth Circuit precedent.  *See e.g. Cain v. Nevada County School Dist.*, No. 4:10-cv-04011, 2011 WL 6370082, at *4 (W.D. Ark. Dec. 20, 2011).  However, before turning to the issue of what standing analysis the Court should apply, the Court must first outline the specific harms sought to be redressed through the TCPA generally.

**1. Concrete Injury Under the TCPA**

Congress passed the TCPA in 1991 to address the nuisance and intrusions caused by the increasing number of pre-recorded and unsolicited calls that were being made to residential telephones.  *See e.g. Barr v. American Association of Political Consultants, Inc.*, 591 U.S. __, 140 S. Ct. 2335, 2344 (2020).  To address this issue, the TCPA made it unlawful for telemarketers to use "any automatic telephone dialing system" ("ATDS") to contact a person's cell phone without "the prior express consent of the called party[.]"  47 U.S.C. § 227(b)(1)(A).  The TCPA creates a private cause of action for individuals who receive messages via an ATDS in violation of the Act. 47 U.S.C. § 227(b)(3).  Although the TCPA itself does not specifically prohibit the use of an ATDS to send automated text messages, the FCC has used its rulemaking authority to apply the statute to text messages.  *See Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (stating that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]").[2]

---

[2] The Court notes that *Gomez* is unclear as to whether the Supreme Court intended this language to be a declaration that a text message is considered a "call" within the meaning of the TCPA in all instances, or instead whether the Supreme Court was merely acknowledging that the issue was not challenged in the present lawsuit.  However, district courts in the Eighth Circuit have cited *Gomez* for the proposition that a text message is a call under the TCPA and the issue is not challenged here.  *See Gould v. Farmers Ins. Exch.*, 288 F. Supp.3d 963, 967 (E.D. Mo. 2018); *Yashtinsky v. Walmart, Inc.*, Case No. 5:19-cv-5105, 2019 WL 5986708, at *2 (W.D. Ark. Nov. 12, 2019).

The harms addressed by Congress through the TCPA are intangible injuries, which although harder to recognize in a straightforward standing analysis, "can nevertheless be concrete." *Spokeo*, 578 U.S. at 340.  However, "[a] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Golan*, 930 at 958 (quoting *Spokeo*, 578 U.S. at 341)).  Indeed, as this Court has previously observed, "a concrete injury does not automatically flow from Congress's identification of a harm, and the concreteness requirement is still present even in the context of a statutory violation." *Kelly v. Lindsey Mgmt. Co., Inc.*, 4:15-cv-04035, 2017 WL 10129164, at *2 (W.D. Ark. 2017) (citing *Spokeo*, 578 U.S. at 341)).

When a plaintiff asserts harm to an intangible interest, courts look to "both history and the judgment of Congress" to determine whether the injury complained of constitutes a concrete injury in fact under Article III.  *Spokeo*, 578 U.S. at 340.  Under this approach, the Supreme Court has stated that "it is instructive [for courts] to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id*.  The Supreme Court has further explained that Congress is particularly suited "to identify intangible harms that meet minimum Article III requirements" and therefore "its judgment is . . . instructive and important."  *Id*.

The parties agree that the Court must consider both history and Congress's intent in passing the TCPA to determine whether Jones's receipt of a single text message presents a sufficient injury in fact to confer standing to pursue a TCPA claim.  However, the parties disagree as to the manner in which history and intent should be applied to the facts presented.  Indeed, State Farm cites to the *Salcedo* case out of the Eleventh Circuit to argue that the receipt of a single unwanted text message poses a diminished injury such that it would not have been recognized under English

common law and should therefore be rejected here. In response, Plaintiff argues that the Court should reject *Salcedo* because it diverges from Eighth Circuit precedent and has been specifically rejected by a number of other circuits. Instead, Plaintiff asserts that the Court's standing analysis should focus only on whether the harm of a single unsolicited text message is related to the kind of harms that were recognized at common law, without regard to the actual severity of the harm alleged. Accordingly, the Court must consider the Eleventh Circuit's opinion in *Salcedo* to determine whether it conforms or departs from Eighth Circuit precedent.

### a. *Salcedo*

In *Salcedo*, a Florida attorney sent plaintiff, a former client of the attorney, an unsolicited text message which offered a ten percent discount for the attorney's services. *Salcedo*, 936 F.3d at 1165. Plaintiff filed suit alleging violation of the TCPA, and defendant moved to dismiss the action on the grounds that a single text message was not a concrete injury in fact for the purposes of Article III standing. *Id*. The court in *Salcedo* specifically addressed whether the judgment of Congress and history rendered the receipt of a single text message as a sufficient injury in fact for the purpose of Article III standing. *Id*. at 1168.

Regarding the judgment of Congress, the Eleventh Circuit noted that Congress said "nothing" in the TCPA on the subject of unsolicited text messages, and observed that Congress's judgment on the subject "is ambivalent at best[.]" *Id.* at 1169. The court also observed that the Act primarily regulates unsolicited phone calls made to residential rather than mobile phones. *Id*. Because of this, the Court found that Congress's primary concern in passing the TCPA was to address the harms associated with "intrusive invasions of privacy into the home[.]" *Id.* at 1170. In reaching this conclusion, the court found persuasive that text messages "will not always involve an intrusion into the privacy [of] the home" because a cell phone is portable and capable of being

7

silenced. *Id*. Accordingly, the Court held that "[t]he judgment of Congress . . . provides little support for finding that [Plaintiff's] allegations state a concrete injury in fact." *Id*.

Turning to the question of history, the Eleventh Circuit specifically compared Plaintiff's alleged injury to the accepted common law torts of intrusion upon seclusion, nuisance, conversion, and trespass to chattel. *Id*. at 1170-71. With regard to intrusion upon seclusion, the court held that a single text message to a private cell phone was not closely related to the severe kinds of intrusions that the tort would have traditionally recognized as actionable, such as wiretapping, eavesdropping, and looking through one's personal documents. *Id*. at 1171 (citing Restatement (Second) of Torts § 652B). With regard to nuisance, the court held that a single text message to a cell phone did not impact the sort of real property rights that would ordinarily be required to sustain a nuisance cause of action. *Id*. Then, turning to the personal property torts such as conversion and trespass to chattel, the court again concluded that "[h]istory shows that [plaintiff's] allegation" of receiving a single unsolicited text message "is precisely the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Id*. at 1172. Based on these observations, the Eleventh Circuit held that the receipt of a single unsolicited text message fails to satisfy the injury in fact requirement necessary to confer Article III standing to pursue a TCPA claim. *Id*. at 1172-73.

State Farm urges the Court to adopt the approach taken by the Eleventh Circuit in *Salcedo* and find that Jones's receipt of a single unsolicited text message is insufficient to confer Plaintiff Article III standing to pursue this TCPA claim. In response, Plaintiff cites case law from other circuits which have either expressly or by implication rejected *Salcedo*'s reliance on the severity of the harm alleged in its standing analysis. As noted above, the Eighth Circuit has not squarely addressed whether the receipt of a single text message constitutes a concrete injury in fact under Article III. Accordingly, the Court must outline the Eighth Circuit's approach to standing under

the TCPA generally and then determine whether either *Salcedo* or the cases cited by Plaintiff better conforms to established Eighth Circuit precedent.

### i. *Salcedo* and Eighth Circuit Precedent

Plaintiff argues that the Court should reject *Salcedo* because it conflicts with the Eighth Circuit's approach to standing as adopted in *Golan*. In *Golan*, the Eighth Circuit held that plaintiffs had established a sufficient concrete injury in fact to pursue a TCPA claim when they allegedly received two unsolicited and pre-recorded voicemails on their answering machines. *Golan*, 930 F.3d at 957-59. Specifically, the plaintiffs in *Golan* received two pre-recorded messages that stated: "Liberty. This was a public survey call. We may call back later." *Id.* at 955. The calls were placed as part of a nationwide advertising campaign that was designed to promote a niche political film by targeting those who potentially aligned with the film's ideological message. *Id*.

The Eighth Circuit held in *Golan* that the two unsolicited and prerecorded phone calls were sufficient to confer Article III standing because the harms associated with receiving the telemarketing messages "b[oar] a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance." *Id*. at 959. Unlike the Eleventh Circuit in *Salcedo*, the court in *Golan* did not consider whether the harm suffered was of sufficient *severity* to confer standing. Moreover, the *Golan* decision did not offer any real comparison between the harms alleged by plaintiffs and those redressed by the traditional common law tort of nuisance. Instead, the Eighth Circuit held generally that Congress had elevated the status of the harms associated with unsolicited telephone calls to such a degree that the minimal harms presented were now sufficient to establish a concrete injury in fact. *Id*. at 959.

In addition to *Golan*, Plaintiff argues that the Court should also disregard *Salcedo* because various other courts have rejected its reliance on the severity of the harm alleged to determine

standing. Instead, Plaintiff urges the Court to consider only whether the harms she alleges under the TCPA are similar to the *kind* of harms that were cognizable by common law courts. In support, Plaintiff cites a Seventh Circuit opinion, authored by then Circuit Judge Amy Coney Barrett, where the court specifically rejected *Salcedo* and found that the receipt of five unsolicited text messages was sufficient to confer Article III standing.[3] *See Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020).

In *Gadelhak*, the Seventh Circuit observed that the common law tort of intrusion upon seclusion involved some level of redress for irritating intrusions, "such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id*. at 462 (quotations omitted). Thus, the court held that the receipt of unsolicited text messages conferred Article III standing because the "harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." *Id*. In its decision, the Seventh Circuit specifically rejected *Salcedo* and its consideration of whether that harm was of a sufficient severity so as to confer standing. *Id*. Instead, the Seventh Circuit found that unsolicited text messages were a concrete injury in fact under Article III because unwanted text messages "pose the *kind* of harm that common law courts recognize[,]" and thus constituted "a concrete harm that Congress has chosen to make legally cognizable." *Id*. at 463 (emphasis in original).

*Gadelhak* is premised on the idea that when courts look to whether a harm is grounded in common law traditions, it is meant to look for whether the harm alleged bears a close relationship to the kind of harm redressed by common law torts, not the degree or severity. *Id*. at 462 (citing *Spokeo*, 578 U.S. at 341). Under this approach, the common law "does not stake out the limits of Congress's power to identify harms deserving a remedy[.]" *Id.* at 463. Instead, Congress may

---

[3] Specifically, the plaintiff in *Gadelhak* received five text messages from AT&T even though he was not an AT&T customer. *See Gadelhak*, 950 F.3d at 460.

10

elevate previously unrecognized harms into legally cognizable and concrete injuries. *Id.* Therefore, under *Gadelhak*, the receipt of a single unsolicited text message would constitute a concrete injury in fact under Article III if it poses a risk of harm that is similar to those recognized at common law, and Congress intended to elevate that harm into a legally cognizable injury. The Court notes that the rationale outlined in *Gadelhak* has been adopted by all other circuits, other than the Eleventh Circuit, which have addressed the issue of standing under the TCPA. *See Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 690-91 (5th Cir. 2021) (expressly rejecting *Salceno* and holding that the harms associated with unsolicited text messages are both regulated by the TCPA and closely related in kind to those traditionally recognized at common law); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2nd Cir. 2019) (holding that the receipt of unsolicited spam text messages were "the very injury" the TCPA is designed to prevent and that such bears a close relationship to harms traditionally redressed at common law); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (holding that "nuisance and invasion of privacy" arising out of a single prerecorded telephone call are "the very harm that Congress sought to prevent")); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that a plaintiff need not allege any additional harm beyond an invasion of privacy or disruption of solitude to establish standing under the TCPA).

In addition to these Circuit Court cases, Plaintiff also points out that the United States District Court for the Western District of Arkansas has relied on *Golan* to confer Article III standing upon a plaintiff who allegedly received two unsolicited text messages in violation of the TCPA. *See Yashtinsky v. Walmart*, No. 5:19-cv-5105, 2019 WL 5986708, at *1 (W.D. Ark. Nov. 12, 2019). The court in *Yashtinsky* held that because cell phones are such a pervasive presence in modern life, unwanted text messages are arguably more intrusive than unanswered messages left

11

on answering machines. *Id.* at 2. The court also observed that unwanted text messages waste a quantifiable amount of data on the recipient's cell phone, temporarily reduce the available computing power and application processing speed on the recipient's phone, and require expending a quantifiable amount of energy to recoup the battery power lost as a result of receiving the text message. *Id*. Accordingly, the court concluded that the receipt of two text messages, as well as the attendant injuries alleged, were sufficient to establish Article III standing under the TCPA. *Id*.

Based on the foregoing, the Court finds that the approach articulated by the Seventh Circuit in *Gadelhak* is substantially similar to the Eighth Circuit's decision in *Golan* and should therefore be adopted here. Like *Gadelhak*, the Eighth Circuit in *Golan* recognized that the TCPA regulates the unwanted intrusion and nuisance related to unsolicited contact via phone. *Golan*, 930 F.3d at 959. Moreover, *Golan* appears to specifically adopt *Gadelhak*'s reasoning that "[i]t is not dispositive whether unsolicited telephone calls are actually actionable under any common law tort because Congress may elevate" previously inadequate harms into legally cognizable and concrete injuries. *Compare Golan*, 930 F.3d at 959, *with Gadelhak*, 950 F.3d at 462-63 (holding that "while common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy"). Indeed, the Eighth Circuit's holding in *Golan* did not turn on whether the harm alleged was similar in degree or severity to the harms that were recognized at common law. Accordingly, the Court declines to adopt *Salcedo* because it is a clear departure from Eighth Circuit precedent. Instead, the Court adopts the approach to Article III standing as articulated by the Seventh Circuit in *Gadelhak*.

Now, having determined that the approach outlined in *Gadelhak* specifically applies to this case, the Court must turn to the facts presented to determine whether the receipt of a single

unsolicited text message is similar to the kind of harms recognized at common law and whether Congress intended to elevate that harm into a concrete injury in fact for the purpose of Article III standing.

### b. Common Law Harm and Congressional Intent

The Eighth Circuit has recognized that the "harm to be remedied by the TCPA was 'the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements.'" *Golan*, 930 F.3d at 959 (quoting *Van Patten*, 847 F.3d at 1043). Although the Eighth Circuit has not applied the TCPA specifically to text messages, the Fifth Circuit has recently observed that, to the exclusion of the Eleventh Circuit, its "sister circuits have reached the same conclusion: '[T]elemarketing text messages present the precise harm and infringe on the same privacy interests Congress sought to protect in enacting the TCPA.'" *Cranor*, 998 F.3d at 690 (collecting cases). Indeed, a number of courts have specifically held that the TCPA addresses harms that are related in kind to harms that were traditionally redressed through common law torts. *See generally id*. at 691 (finding that the harms addressed by the TCPA bears a close relationship to the common law tort of public nuisance); *Galhadak*, 950 F.3d at 462 (finding that the harms addressed by the TCPA are "analogous" to the harms redressed by the common law tort of intrusion upon seclusion); *Melito*, 923 F.3d at 93 (finding that the harms addressed by the TCPA bear a close relationship to the common law torts of invasions of privacy, intrusion upon seclusion, and nuisance).

Based on the forgoing, the Court finds that the receipt of a single unsolicited text message is sufficient to confer Article III standing under the TCPA. However minimal, unsolicited text messages pose both a nuisance and unwanted intrusion into one's life. This harm is related in-kind to those harms traditionally redressed through the common law torts of nuisance and intrusion

13

upon seclusion. Moreover, it is immaterial that Plaintiff seeks redress for the receipt of a single unsolicited text message. Distinguishing between the harms suffered by the receipt of one versus multiple unsolicited text messages would supplant the proper "similar in-kind" analysis with one that improperly questions whether the harm suffered is sufficiently severe. Indeed, Congress may elevate harms that were previously unactionable at common law and has done so with respect to the annoyance and intrusion alleged by Plaintiff. Therefore, based on the case law outlined above, the Court finds that Jones's receipt of a single unsolicited text message is sufficient to confer Article III standing under the TCPA. Accordingly, State Farm's Motion to Dismiss based upon lack of standing should be denied.

### B. Failure to State a Claim

State Farm next argues that the Complaint should also be dismissed because it fails to allege facts sufficient to state a plausible cause of action under the TCPA. As stated above, the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS]." 47 U.S.C. § 227(b)(1)(A). The TCPA defines an ATDS as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

State Farm argues that the Complaint should be dismissed because it fails to allege facts sufficient to show that State Farm sent the text message to Jones using an ATDS. In particular, State Farm argues that the Complaint fails to establish a plausible claim that it used an ATDS as that term was recently defined by the United States Supreme Court in *Facebook, Inc. v. Duguid*, 592 U.S. __, 141 S. Ct. 1163 (2021). Accordingly, the Court must outline the *Duguid* decision to

determine if the Complaint alleges sufficient facts to state a plausible claim that State Farm sent the subject text message to Jones using an ATDS.

### 1. *Duguid*

In *Duguid*, the Supreme Court held that "[t]o qualify as an [ATDS], a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. The Court found further that "[t]he statutory context" of the TCPA confirms that the [ATDS] definition excludes equipment that does not "us[e] a random or sequential number generator." *Id*. at 1171. The Court therefore concluded "that a necessary feature of an [ATDS] under [the TCPA] is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id*.

State Farm argues that the Complaint should be dismissed because the text message it sent to Jones was not randomly generated, but rather was sent specifically to Jones in response to her insurance claim. In support of this argument, State Farm points out that Jones intentionally provided State Farm with her cell phone number when Jones filed her insurance claim, and that State Farm specifically targeted that phone number when it sent her a text message regarding her claim. State Farm concludes that its dialing system does not qualify as an ATDS under the facts presented because Jones's phone number was selected from a previously generated database of numbers.

In response, Plaintiff argues that the system used by State Farm qualifies as an ATDS because it has the capacity to use a sequential number generator to produce phone numbers to be called, regardless of whether the phone numbers were already contained in State Farm's database. Plaintiff specifically argues that State Farm utilized this dialing system when it sent the message

15

to Jones because it randomly or sequentially generated a list of numbers from its database of phone numbers, which included Jones's, and then set a text message to those numbers generated. Under Plaintiff's argument, an ATDS would include technology which randomly or sequentially selects a subset of numbers that are contained in a larger, non-random database of numbers.

Plaintiff's argument was not squarely addressed by the *Duguid* decision. However, many district courts have relied on *Duguid* to hold that a platform which produces a set of phone numbers from an established, non-random database of phone numbers, or specifically targets numbers in that non-random database, does not qualify as an ATDS under the TCPA. *See Pascal v. Concentra, Inc.*, No. 19-cv-02559, 2021 WL 5906055, at *8 (N.D. Cal. Dec. 14, 2021) (holding that "under *Duguid*, a platform that merely targets telephone numbers that were obtained in a non-random way is not an [ATDS] for the purposes of the TCPA."); *Barry v. Ally Financial, Inc.*, No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021) (holding that the dialer used was not an ATDS because the "calls were targeted at specific individuals in connection with specific accounts held by Defendant"); *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (holding that the dialing system which called "numbers stored in its system" was not an ATDS because, among other things, "the calls suggest that they were targeted at specific individuals"). Indeed, the United States District Court for the Western District of Texas has relied on these decisions to specifically hold that the definition of an ATDS does not include "calls made to specific individuals . . . whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer." *Samataro v. Kelly Williams Realty, Inc.*, 1:21-cv-76-RP, 1:20-cv-835-RP, 1:18-cv-775-RP (lead), 2021 WL 4927422, at *4 (W.D. Tex. Sept 27, 2021) (cases cited).

Based on the foregoing, the Court finds that Plaintiff has failed to allege facts sufficient to state a plausible claim that State Farm used an ATDS to contact Jones in July 2020. As alleged in the Complaint, Jones provided her phone number directly to State Farm when she filed an insurance claim with the company. Plaintiff then alleges that Jones's phone number became part of a preproduced dataset of numbers, and that State Farm used a dialing system to produce and contact a set of phone numbers that was randomly or sequentially generated from that preproduced dataset. Then, it is alleged that State Farm used the set of numbers generated by the dialer to specifically target Jones and send her a text message with information related to her open insurance claim. Importantly, the Complaint does not allege that Jones's number was generated wholly at random but was instead randomly selected and specifically contacted out of a preproduced set of numbers.

Under these circumstances, the Court cannot hold that the allegations in the Complaint state a plausible claim that Jones's cell phone number was randomly stored or generated using an ATDS. Jones specifically provided her phone number to State Farm. As such, Jones's phone number was never randomly or sequentially generated through any ATDS technology. Instead, State Farm selected Jones's number from its established dataset of phone numbers and then sent Jones a text message regarding her outstanding insurance claim. This is the precise form of non-random contact that has been specifically rejected by district courts under the TCPA in the months since *Duguid*. Accordingly, Plaintiff's Complaint should be dismissed because it fails to state a plausible claim that State Farm contacted Jones using a random or sequential number generator.

### IV.  CONCLUSION

Plaintiff has standing to pursue a TCPA claim based upon the receipt of a single unsolicited text message because Congress intended to elevate the harms associated with unsolicited

17

messaging into a legally cognizable injury. However, Plaintiff has failed to state a plausible claim for relief under the TCPA because the allegations in the Complaint demonstrate that the text message complained of was not randomly or sequentially generated. Moreover, because Plaintiff's Complaint fails to allege facts sufficient to establish a cause of action under the TCPA, the Court need not address State Farm's argument that Jones's TCPA claim did not survive her death.

For the above-stated reasons, Defendant's motion to dismiss (ECF No. 38) is hereby **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED WITHOUT PREJUDICE**. The parties' Motion to Stay Discovery and Initial Disclosures (ECF No. 43) is **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 20th day of January, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge